Nov. Term,
1855.

MAJOR
v.
BRUSH.

---

## MAJOR v. BRUSH.

The possession of land by the person who was the owner when it was listed and assessed for taxes, or by those claiming under him, is not necessarily adverse, so as to render the transfer of the title by a tax purchaser to a third person void.

*A.* purchased certain land at a sale for taxes, which was described in the deed executed to him by the auditor as "seventy-six acres of land, being a part of the south-east quarter of," &c., giving the township and range, and also the county and state wherein the same was situate. *A.* afterward conveyed the same land to *B.*, by the same description, identifying it, also, as the piece sold to him by the auditor, &c. The statute provides that when less than the whole of a tract is sold for taxes, the quantity sold shall be laid off in a square form, in the north-west corner of the tract. *Held*, that the deed of *B.* sufficiently identified the land.

A party who has purchased land and received a conveyance with a full knowledge of the facts relating to the sufficiency of the title, can not afterward, no fraud having been practised, nor misrepresentation made, maintain assumpsit to recover back the purchase-money, by reason of a defect in the title.

*Tuesday,*
*December* 11.

APPEAL from the *Dearborn* Circuit Court.

STUART, J.—Assumpsit upon the common counts, under the old practice. Plea, the general issue. Verdict and judgment for the plaintiff. *Major*, who was defendant below, appeals. The evidence is all in the record in proper form.

The cause of controversy is disclosed only in the evidence.

On the 1st of *January*, 1844, *Major* bought seventy-six acres of land at tax sale. The description of the land sold, as given in the auditor's certificate, is, that he "sold to *Daniel S. Major* seventy-six acres of land, being a part

of the south-east quarter of section twenty-one, township four, range three west, for 2 dollars and 86 cents, the amount of taxes," &c., "due." The certificate is silent as to what part of the quarter-section the seventy-six acres sold lies in. In due time, *Major* procured a deed from the proper office.

*Brush*, the plaintiff, subsequently purchased from *Major*, for the nominal sum of 100 dollars, viz., a wagon at 70 dollars and 30 dollars cash. *Major* and wife executed to *Brush* a quit-claim deed for "seventy-six acres of land, being a part of the south-east quarter of section twenty-one, township four, range three west, in *Ohio* county," &c., precisely as described in the tax certificate. The description goes on further to identify it, as being the piece of land sold to *Major* by the auditor of *Dearborn* county on the first *Monday* in *January*, 1844.

It was further in evidence that at the time of the sale to *Brush*, and for several years before, some part of the quarter-section had been in the possession of persons claiming title. It also appeared that *Joseph B. Glenn* was the original purchaser from the *United States*.

It is not contended that *Major* assumed to sell anything more than his right, whatever that was, by virtue of the tax title, or that he pretended to be acquainted with the land, or made any misrepresentation, either in relation to the title or the situation of the land. The witnesses present at the contract say, *Brush* "proposed to buy *Major's* title or right to the land." "*Brush* said he knew all about the situation of the land and title; he could get timber enough off from it to make himself whole if ever anybody should redeem it." "*Major* said he knew nothing about the land or title more than the certificate told him." The other witnesses who speak of this conversation, do not make it differ materially from the above. *Brush*, the father of the plaintiff, says, "*Major* told the plaintiff that the land had belonged to a young man who had gone to *Philadelphia*, and would not probably come back. Plaintiff said if he had it in possession four or five years, he could make his money out of the timber. *Major* said he

would only make a quit-claim deed; that the sale to him was made by the auditor, and he thought it was legal."

On this state of facts, it is insisted in support of *Brush's* right to recover back the purchase-money, that the deed is void,—1. Because of an adverse possession at the date of the deed. 2. Uncertainty in the description of the land.

It may be premised that the possession claimed to be adverse, is not shown to be so, and is very clearly no more than the possession of the owner, or those claiming under him at the time the land was listed and assessed for taxes. It is analogous to the possession of an execution-defendant, and not necessarily adverse to *Major*. 2 Ind. R. 123.

The uncertainty in the deed is also a naked assumption. *Major's* deed is in the very terms of the auditor's deed and refers to it expressly. The law fixes the boundaries of the auditor's deed: it shall be laid off in a square form in the north-west corner of the tract. 2 R. S. 1852, p. 138. So that the location of the seventy-six acres is susceptible of being reduced to certainty by survey.

Admitting the premises, therefore, thus qualified, that part of the land was in the possession of *Glenn*, or those claiming under him, the conclusion of counsel does not seem to follow. *Pearson* v. *Doe*, 2 Ind. R. 123. *Brush* received from *Major* all he bargained for. The proposition of purchase was "*Major's* right to the land." *Brush* assumed to know all about the land and the title. *Major* assumed to know nothing about the land or the title more than the certificate told him. A deed, in the very terms of that certificate, as near as might be, and referring to and identifying the sale for taxes, was accepted by *Brush*. He was not misled by *Major*. He had all the facts before him and undertook to judge for himself. *Port* v. *Williams*, 6 Ind. R. 219. If he knew, as he assumed, all about the situation of the land and the title, he knew of course of the adverse possession, and of the vague description in the certificate and deed. Having paid his money with a full knowledge of all the facts, he has no right to complain. So are all the authorities. In the apt language

of counsel for *Brush*, he who bargains for an uncertainty must ordinarily be content with what he gets.

Ignorance, or mistake of facts, or deceitful representations on the part of those with whom he deals, will usually avail to recover back money parted with under such influence. *McQueen* v. *The Bank*, 2 Ind. R. 413.—*Reynolds* v. *Rochester*, 4 *id*. 43. Here *Brush* knew all the facts, and received all he bargained for. He must be taken to have known the law. 6 Blackf. 389.

We are referred by counsel to *Martin* v. *Pace*, 6 Blackf. 99, and *Hawkins* v. *Johnson*, 4 *id*. 21. The first is the common instance of a successful plea of want of consideration, pleaded to a money bond—a mere executory contract.

The other case, in 4 Blackf., *supra*, was this: A land-office certificate was issued to the heirs of *Truman Richards*, deceased. *Hawkins*, his administrator, sold and assigned it to *Johnson*, who sued for money had and received, and recovered the purchase-money he had paid. The Court say, it is equally clear that the land-office certificate, which was issued in the name of the heirs of *Richards* and belonged to them, could not be assigned by the administrator. The assignment was absolutely void, and the assignor liable to the assignee for the amount paid. The consideration received by the assignor for the void assignment, may be considered as so much money had and received by him for the use of the assignee.

It is not very clear under what circumstances or representations this assignment took place—whether by order of the Probate Court or otherwise. The face of the certificate showed that the title was in the heirs of *Richards*. This fact ought to have put *Johnson* upon inquiry, and was, it should seem, sufficient to charge him with knowledge. The seeming force of that part of the case, as applicable to the question before us, must be admitted. But if such should be thought the scope of that decision, it must be regarded as overruled by the decision of the same learned judge (*Blackford*,) at the very next term, in *Vest* v. *Weir*, 4 Blackf. 135.

In the latter case, the facts were these: The *Weirs* sued *Vest* for 350 dollars, the consideration paid him for his possessory right to eighty acres of land. At the time of the sale, he told them he had no title—that it belonged to the *United States*. *Held*, that this was a voluntary payment, with a full knowledge of all the facts, and could not be recovered back. If there is any conflict, we greatly prefer the latter ruling, as in accordance with almost universal authority.

It is unnecessary to examine the subject with reference to quit-claim deeds; but see 2 Kent 473.

*Per Curiam.*—The judgment is reversed with costs. Cause remanded, &c.

*D. S. Major* and *E. Dumont*, for the appellant.

*J. Ryman* and *P. L. Spooner*, for the appellee.